399 A.2d 682

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**George BETRAND, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 13, 1978.

Decided March 16, 1979.

Rehearing Denied April 16, 1979.

512

514

Joseph C. Mossop, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

EAGEN, Chief Justice.

On April 5, 1973, George Betrand was convicted by a jury in Philadelphia of murder of the first degree, aggravated robbery, conspiracy and violating The Uniform Firearms Act. Post-verdict motions filed by trial counsel seeking arrest of judgment or a new trial were denied, and judgment of sentence of life imprisonment was imposed on the murder conviction. A concurrent term of not less than ten years nor more than twenty years imprisonment was imposed on the aggravated robbery conviction. On appeal to this Court, we affirmed the judgments of sentence. *Commonwealth v. Betrand,* 459 Pa. 599, 330 A.2d 864 (1975).

On October 7, 1976, Betrand filed a petition for relief under the Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, § 1, *et seq.,* 19 P.S. 1180–1 *et seq.* (Supp.1978–79) [hereinafter: PCHA]. Following a hearing, the relief requested was denied. This appeal is from that order.[1]

---

1. Betrand filed an appeal with the Superior Court of Pennsylvania from the order denying relief on the aggravated robbery conviction. That appeal was subsequently certified to this Court.

■ Betrand alleges that the PCHA court erred in denying relief for the following reasons: (1) he was denied his constitutional right to representation by competent counsel at trial and on direct appeal;[2] and, (2) he was deprived of a right not recognized at trial, but which requires retrospective application. In support of his allegation that counsel was ineffective, Betrand advances four distinct claims. However, we need only discuss the merits of three of these claims.[3]

■ In evaluating the effectiveness of counsel, we are guided by the standard set forth in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967):

> "We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." [Emphasis in original.]

2. To be eligible for relief under the PCHA, a petitioner must prove the error resulting in his conviction and sentence has not been waived. Section 3(d) of the PCHA, 19 P.S. 1180–3(d) (Supp.1978–79). *Commonwealth v. Sherard,* 483 Pa. 183, 394 A.2d 971 (1978); *Commonwealth v. LaSane,* 479 Pa. 629, 389 A.2d 48 (1978). Instantly, the issue of counsel's ineffectiveness at trial is not waived despite not having been raised on direct appeal. Betrand's trial counsel also represented him on appeal, and to expect counsel on appeal to argue his own ineffectiveness at trial is unrealistic. *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975).

3. One of Betrand's claims in support of his allegation of ineffective assistance of counsel is that, on direct appeal, counsel failed to raise his alleged ineffectiveness at trial. This claim is without merit because the failure is of no consequence. Where a defendant is represented on appeal by his trial counsel, claims of counsel's ineffectiveness at trial may be raised in PCHA proceedings. *Commonwealth v. Dancer,* supra.

Accord *Commonwealth v. Sherard,* supra; *Commonwealth v. Martin,* 479 Pa. 63, 387 A.2d 835 (1978); *Commonwealth v. Little,* 468 Pa. 13, 359 A.2d 78 (1976). However, before inquiring into the basis for counsel's failure to raise certain issues at trial, we must determine if these issues are of arguable merit. *Commonwealth v. Sherard,* supra; *Commonwealth v. Gaston,* 474 Pa. 218, 378 A.2d 297 (1977); *Commonwealth v. Humphrey,* 473 Pa. 533, 375 A.2d 717 (1977); *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). If we conclude the issues are of arguable merit, then and only then do we proceed to inquire whether the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Martin,* supra; *Commonwealth v. Hubbard,* supra.

Betrand's initial claim is that counsel was ineffective for failing to object to the following remark by the assistant district attorney during his opening statement to the jury:

"Mr. Betrand plead guilty and he just says to the Commonwealth, 'Go ahead and prove your case.' That's what we have to do and that's what we're all about." [4]

Contrary to the prosecutor's statement, Betrand, in fact, plead "not guilty" to each indictment.

In order to obtain judicial relief, the language of the prosecuting officer in the opening statement must be such that its unavoidable effect is to so prejudice the jury against the accused and prevent the finding of a true verdict. *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975). *Commonwealth v. Martin,* 461 Pa. 289, 336 A.2d 290 (1975). Instantly, the prosecutor's inadvertence in stating Betrand "plead guilty" was not repeated at any time during the remainder of the trial. Compare *Commonwealth v. Fairbanks,* 453 Pa. 90, 306 A.2d 866 (1973). Furthermore, the record reveals Betrand plead not guilty before the panel

4. Betrand's counsel testified at the PCHA hearing that he did not recall the comment ever being made. He stated Betrand's plea at trial was "not guilty" and assumed the statement on the record "might have been a stenographic error and [the prosecutor] stated actually that there was a 'not guilty plea.'" We will assume, as did the PCHA court, that the comment was actually made.

of potential jurors; that counsel repeated this plea several times during individual voir dire; that the court crier repeated the plea of "not guilty" to the members of the jury; and, that the trial judge reiterated this plea in his charge. Under all the circumstances, we find the prosecutor's isolated remark could not have prejudiced the jury against Betrand, and did not prevent the finding of a true verdict. Therefore, since we conclude the issue counsel is charged with failing to raise, through an objection, lacked arguable merit, we need not inquire into the basis for counsel's decision not to object. *Commonwealth v. Hubbard*, supra. Accordingly, counsel's failure to object is not ineffectiveness.

Betrand's second claim of ineffective assistance of counsel concerns the voluntariness of his inculpatory statement made subsequent to his arrest and introduced into evidence by the Commonwealth. Betrand claims counsel was ineffective for failing to inquire, during cross-examination of the detective who recorded the statement, into any circumstances which would have permitted the jury to conclude Betrand was coerced, either physically or psychologically, into making the statement. According to Betrand, counsel ignored certain facts [5] which provide a more than adequate basis for inquiring into the voluntariness of the confession.

A defendant has the right to present the issue of voluntariness of a confession to a jury. *Commonwealth v. Camm*, 443 Pa. 253, 277 A.2d 325 (1971); *Commonwealth v. Joyner*, 441 Pa. 242, 272 A.2d 454 (1971). "[T]he ultimate test for voluntariness is whether the confession is the product of an essentially free and unconstrained choice by its maker." *Commonwealth v. Smith*, 470 Pa. 220, 368 A.2d 272 (1977), quoting *Commonwealth v. Alston*, 456 Pa. 128, 317

---

5. Betrand argues counsel ignored the following facts: (1) Betrand was eighteen years old at the time of his arrest; (2) Betrand was poorly educated; (3) Betrand consumed alcoholic beverages on the day of his arrest; and (4) Betrand was not permitted to see anyone, including his mother, until after the statement was recorded. We note that counsel did cross-examine the interviewing detective as to when Betrand was permitted to see his mother. Hence, we assume Betrand is actually contending the cross-examination on this point was not sufficiently extensive.

A.2d 241 (1974). An evaluation seeking to determine whether a confession is voluntary must consider the totality of the circumstances. Circumstances which may be considered include the conditions of detention; the manifest attitude of the authorities toward the defendant; the defendant's physical and psychological state; and, all other conditions which may serve to drain one's power of resistance to suggestion and undermine his self-determination. See *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *Commonwealth v. Simms,* 455 Pa. 599, 317 A.2d 265 (1974); *Commonwealth v. Eiland,* 450 Pa. 566, 301 A.2d 651 (1973); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968).

In arguing counsel was ineffective for not raising the issue of the voluntariness of his confession, Betrand ignores certain facts which are a part of the record and were within counsel's knowledge at the time he decided not to cross-examine the interviewing detective. First, there was a pretrial motion to suppress the statement which, after a hearing, was denied. At the suppression hearing, the uncontradicted testimony of the interviewing detective was that Betrand exhibited a normal mental and physical condition throughout the interview.[6] Second, at trial, the uncontradicted testimony of the interviewing detective was that he read Betrand the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); that Betrand acknowledged he understood the warnings; that Betrand indicated he was willing to answer any questions of his free will, without force or fear and without any threat or promise having been made to him; and, that Betrand, at the time of his confession, appeared normal, alert and responsive. Third, at trial, the uncontradicted testimony of the arresting police officer was that Betrand was not drunk and did not give any indication of being under the influence of any narcotics. Fourth, Betrand's confession, which took

6. At the suppression hearing during cross-examination by Betrand's counsel, the interviewing detective stated: "[Betrand] did not appear to [the detective] to be under the influence of alcohol or drugs at any time that [the detective] spoke with [Betrand].

approximately fifty-five minutes to record, was completed within three hours of Betrand's arrest. Finally, the uncontradicted testimony of Betrand's counsel at the PCHA hearing was Betrand never gave him any evidence that he had been subject to any pressure, either physical or mental, during the course of or prior to his providing the statement to the police.

At the PCHA hearing, Betrand declined to testify or to offer any other evidence contradicting any of the facts established by the record. Rather, Betrand chose to rely on the allegations in the brief submitted to the PCHA court.[7] Under the totality of the circumstances, we conclude the record provides a sufficient basis for concluding the issue of the voluntariness of Betrand's statement lacked arguable merit. Therefore, counsel is not ineffective for refraining from presenting to the jury, through the cross-examination of the interviewing detective, this meritless issue. *Commonwealth v. Hubbard,* supra.

Betrand also claims counsel was ineffective for failing to take specific exceptions to two statements made by the trial judge in his charge to the jury. In his charge, the trial judge made the following statements:

"I do not believe it has been argued that, of the men who were arrested, George Betrand was not one of the men that ran away from the milk truck.

"I think that is about it on the evidence. I am going to give you the law, and you will have to follow this, particularly in the homicide area; not that I think it is that complicated, but there are two kinds of murder, as the Assistant District Attorney pointed out, and this is a felony murder."

Betrand argues counsel was obligated to take specific exceptions to the two statements because, through the statements, the trial judge invaded an area solely within the province of the jury.

7. See note 5, infra.

▉ Instructions to the jury may not contain any judicial expression of guilt nor invade the prerogatives of the jury. See *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974); *Commonwealth v. Hudson*, 455 Pa. 117, 314 A.2d 231 (1974). In determining whether or not a trial judge's instructions breach the preceding principle, we must evaluate the instructions in their entirety. *Commonwealth v. Russell*, 459 Pa. 1, 326 A.2d 303 (1974).

▉ Instantly, the questioned portions of the trial judge's instructions in no way usurped the jury's power to render a fair and impartial verdict. After reviewing the record, we are convinced the first challenged statement is an accurate summary of Betrand's counsel's argument to the jury in this case.[8] See *Commonwealth v. Gaddy*, 468 Pa. 303, 362 A.2d 217 (1976). Furthermore, the second challenged statement, when taken in context, simply indicates that crime which the Commonwealth's evidence, if believed, tended to establish. See *Commonwealth v. Walker*, 459 Pa. 12, 326 A.2d 311 (1974). Both of the challenged statements were part of a charge that adequately cautioned the jury that they were the supreme arbiters of fact; that they should trust their recollection in preference to accepting the judge's comments; and, that the presumption of innocence prevailed in the absence of proof of guilt beyond a reasonable doubt. Clearly, when considering the charge in its entirety, the challenged statements do not invade any function of the jury. Therefore, the issue counsel is charged with not raising through specific exceptions is without merit. Accordingly, counsel's failure to take specific exceptions to the trial judge's charge does not constitute ineffectiveness. *Commonwealth v. Hubbard*, supra.

▉ In addition to his allegation of ineffective assistance of counsel, Betrand alleges he is entitled to relief under the

8. In his argument to the jury, Betrand's counsel never presented an alibi defense, i. e. Betrand was not present at the scene of the killing or not apprehended as he ran from the scene. Rather, counsel argued the Commonwealth failed to prove beyond a reasonable doubt Betrand, although present, perpetrated the crimes charged.

PCHA since he was deprived of a right not recognized at trial, but which requires retrospective application. Section 1180–3(c)(12) of the PCHA, 19 P.S. § 1180–3(c)(12) (Supp. 1978–79). The trial record reveals Betrand's inculpatory statement,. which was introduced during the Commonwealth's case-in-chief, included the following response by Betrand to a question by the interviewing detective:

"Q. How many times did you fire the gun?

"A. I think I fired twice, I don't know because I was high. I had been drinking Thunderbird wine since about 3:00 P.M. I must have drank a quart."

This response was the only evidence of Betrand's possible intoxication at the time of the homicide. Furthermore, Betrand did not request the court to charge the jury as to the possible effect of his consumption of alcohol upon his capacity to commit the crime charged. Nevertheless, Betrand now argues we must give this Court's decision in *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975) [hereinafter: *Graves*] retrospective effect and award him a new trial in order that he may be afforded the right to present further evidence of intoxication and to have the jury instructed as to the possible effect of his intoxication upon his capacity to form the requisite state of mind required for a murder committed during the course of an aggravated robbery.[9]

Section 3(c) of the PCHA provides a petitioner is eligible for relief if, *inter alia*, his conviction or sentence resulted from:

"(12) The abridgement in any other way of any right guaranteed by the constitution or laws of this State of the constitution or laws of the United States, including a right that was not recognized as existing at the time of the trial

---

9. The Commonwealth proceeded on a theory of felony-murder. Since the incident occurred on September 12, 1972, the applicable murder and aggravated robbery statutes are found in the Act of June 24, 1939, P.L. 872, §§ 701 and 705, amended by the Act of December 1, 1959, P.L. 1621, § 1. Appendix to 18 Pa. C.S.A. § 101 at Former Title 18 P.S. 4701 and 4705. This Act was repealed and replaced by the Crimes Code, December 6, 1972, P.L. 1482, No. 334 § 1, eff. June 6, 1973. 18 Pa. C.S.A. § 101 *et seq.*

if the constitution requires retrospective application of that right."

In interpreting this section and the PCHA statute, we have said a claim is not cognizable under the act unless it is of constitutional dimension. *Commonwealth v. Rightnour*, 469 Pa. 107, 364 A.2d 927 (1976) (plurality opinion). Therefore, our first inquiry is to determine if *Graves* recognized a right of constitutional dimension. If we conclude the right recognized in *Graves* is of constitutional dimension and, therefore, cognizable under the PCHA, then and only then do we proceed to inquire whether *Graves* must be given retrospective application. However, after reviewing *Graves*, we are convinced the decision was a ruling based on evidentiary grounds and does not recognize a right of constitutional dimension. Furthermore, Betrand does not provide any reasons for us to conclude otherwise.

In *Commonwealth v. Pickett*, 244 Pa.Super. 433, 368 A.2d 799 (1976) [hereinafter: *Pickett*], cited by Betrand in his brief to this Court, the Superior Court viewed, as we do today, the introduction of intoxication evidence pursuant to *Graves* as a matter of evidentiary law:

"Read together, Rose and Graves hold that, because Pennsylvania law permits the introduction of intoxication on the issue of intent as a matter of *evidentiary law*, the Commonwealth must bear the burden of proof of sobriety as a matter of *constitutional law*." [Emphasis supplied.]

In *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974) [hereinafter: *Rose*], the decision referred to by the Superior Court in *Pickett*, we disapproved a jury instruction placing the burden of proof of an intoxication defense on the accused and intimated our ruling had constitutional underpinnings. This intimation probably led the Superior Court to conclude that *Rose* was constitutionally mandated. However, this conclusion was later completely dispelled by the Supreme Court of the United States in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) and by this Court in *Commonwealth v. Colbert*, 476 Pa. 531, 383 A.2d 490 (1978) (opinion in support of affirmance), and

*Commonwealth v. Ernst,* 476 Pa. 102, 381 A.2d 1245 (1977) (opinion in support of affirmance).

Since neither the ruling in *Graves* or in *Rose* was of constitutional dimension, the right Betrand now claims on the basis of *Graves* is not cognizable in proceedings under the PCHA.

Order affirmed.

ROBERTS, J., filed a concurring opinion in which NIX, J., joins.

MANDERINO, J., filed a dissenting opinion.

POMEROY, former J., did not participate in the decision of this case.

ROBERTS, Justice, concurring.

I agree with the plurality that appellant is not entitled to post-conviction relief, but believe that the plurality unnecessarily attempts to decide difficult issues not presented in this case. Accordingly, I concur in the result.

This Court affirmed judgment of sentence on appellant's convictions before *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975). Appellant now claims he is entitled to a new trial under *Graves* because his felony murder conviction was based upon specific *intent to commit* underlying felonies. But appellant does not now point to evidence of record, or allege there is evidence he could produce, to support his claim of intoxication. Appellant seeks an opportunity to establish intoxication only on the authority of *Graves.*

This argument is quite different from that addressed by the plurality. The plurality reviews the entire record for any possible evidence relating to intoxication, and discovers a reference to drinking in appellant's inculpatory statement to police. On this basis, the plurality decides: (1) unless a claim is of constitutional dimension, it is not cognizable under Section 3(c)(12) of the PCHA; (2) *Graves* is not of

constitutional dimension, but rather a "ruling based upon state evidentiary grounds;" and (3) appellant is not entitled to relief.

There is no need, on this record, to reach whether Section 3(c)(12) is limited to constitutional claims, or whether *Graves* is constitutionally compelled. I would address the issue appellant presents and hold that where, as here, it is not argued that intoxication evidence exists, but only that a conviction of felony murder occurred before *Graves*, *Graves* does not require post-conviction relief.

The order of the PCHA court denying relief is properly affirmed.

NIX, J., joins in this concurring opinion.

MANDERINO, Justice, dissenting.

I dissent to the majority opinion's attempted re-writing of the Post Conviction Hearing Act. That Act provides that relief may be granted if a petitioner's conviction resulted from, among other things:

"(12) The abridgement in any other way of any right guaranteed by the constitution *or laws* of this State or the constitution *or laws* of the United States . . .." [Emphasis added] (Section 3(c) of the PCHA)

Contrary to the majority's assertion, *Comm. v. Rightnour,* 469 Pa. 107, 364 A.2d 927 (1976) (plurality opinion) may not be cited for the proposition that " . . . a claim is not cognizable under the act unless it is of constitutional dimension." (p. 688). The view expressed in the "Per Curiam" opinion in *Rightnour* did not represent the view of a majority of this Court (having been joined only by Mr. Justice Eagen, Mr. Justice O'Brien, and Mr. Justice Pomeroy). Three other justices expressed the view that " . . . The PCHA clearly provides review of [non-constitutional] claims such as that raised by appellant." Id., 469 Pa. at 115, 364

A.2d at 930 (dissenting opinion of Mr. Justice Roberts, joined by Nix and Manderino, JJ.).

Mr. Justice Roberts' words in dissent in *Rightnour* are equally applicable to this present attempt to re-write the PCHA:

"The Legislature and our fellow citizens will be shocked to learn that when a statute reads 'constitution and laws' the majority of this Court construes these words to mean only 'constitution.' This reading makes no more sense than if the majority said 'day and night' means only 'day' or 'A and B' means only 'A.' Put simply, the majority arbitrarily chooses to erase two words used by the Legislature. This defies clear and simple statutory language and creates an absurd result.[4]

[4] The majority, in its interpretation of this section, also defies the Statutory Construction Act of 1972. The Legislature there provides:

'Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage . . ..'

1 Pa.C.S.A. § 1903 (Supp.1976).

'Every statute shall be construed, if possible, to give effect to all its provisions.'

1 Pa.C.S.A. § 1921(a) (Supp.1976).

'When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.'

1 Pa.C.S.A. § 1921(b) (Supp.1976).

'In ascertaining the intentions of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

'(1) That the General Assembly does not intend a result that is absurd . . ..

'(2) That the General Assembly intends the entire statute to be effective and certain.

1 Pa.C.S.A. § 1922 (Supp.1976)."

Id., 464 Pa. at 117, 364 A.2d at 931.

Thus, it does not matter whether appellant's PCHA claim is based on an alleged violation of the "Constitution," or of the "laws" of Pennsylvania. So long as his claim has not been waived or finally litigated, appellant is entitled to be heard on his PCHA petition. I therefore dissent.