448 A.2d 1131

COMMONWEALTH of Pennsylvania,

v.

Allen ANDERSON, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 4, 1979.

Filed July 30, 1982.

Colie B. Chappelle, Philadelphia, for appellant.

Franklin L. Noel, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, CAVANAUGH and O'KICKI,* JJ.

O'KICKI, Judge:

This case arises from a burglary of a building at 327 Cherry Street, "Designers Frank Noffer, Inc." in Philadelphia by appellant, Allen Anderson, on March 6, 1976. Police were summoned by an eye witness, Thomas Yep, who provided a description of the suspect which was relayed to the

* President Judge Joseph F. O'Kicki, of the Court of Common Pleas of Cambria County, Pennsylvania, is sitting by designation.

officers en route to the scene. Upon arrival, Officer Sebastian Sammartino of the Philadelphia Police Department observed the appellant (who fit the radio description) fleeing the scene. After ordering the appellant to halt, and upon his failure to do so, the officer shot him. A screwdriver was retrieved from the person of the appellant along with a green cap, which had fallen off and which became a source of contention at trial. The appellant was taken to the hospital, where he was questioned. Subsequent to this, the eye witness identified him from photographs as the man he observed entering the burglared building.

Prior to jury selection, appellant's counsel requested a continuance. This motion, along with various other pretrial motions were denied, becoming a focal point on appeal. Trial by jury commenced and appellant was convicted of burglary and possessing an instrument of crime. He was then sentenced to eight to twenty years on the burglary charge and two and one-half to five years concurrently on the possessory offense. Appellant's requests for relief in post-verdict motions were denied in an opinion by the Trial Judge. This appeal followed alleging both procedural and substantive error.

Appellant first contends that the in-court identification by the eye witness was constitutionally defective and thus constitutes reversible error. Mr. Yep, the eye witness, was previously shown a single photograph of appellant subsequent to appellant's arrest and questioning at the hospital. This improper photo identification was suppressed by stipulation of counsel and was not admitted during the trial. However, appellant maintains that Yep's in-court identification was tainted by the prior showing of this photo and that no independent basis existed to render the in-court identification reliable.

The Suppression Court found as a fact that Yep's observation of appellant attempting to enter the burglarized building included an adequate facial view, under good lighting conditions for a period of about 5 to 7 minutes from an approximate distance of 20 feet. The court concluded, that

this initial, on-the-scene identification by Yep was "clearly reliable, untainted and nonsuggestive and Yep may testify to it at trial." (Goodheart, J., Findings of Fact and Conclusions of Law, at pp. 2–3).

■ Considering the eye witness had more than ample opportunity to observe the appellant under more than favorable circumstances which aided his observation, we find no error with the Suppression Court's holding to allow Yep to identify appellant in court. *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976).

Although the appellant relys on *Commonwealth v. Bogan*, 482 Pa. 151, 393 A.2d 424 (1978) as a basis for his constitutional objection to the identification, we cannot agree. *Bogan's* facts were directly opposite to the case before us in that the eye witness there was not afforded the same opportunity to observe the criminal at the crime scene as Mr. Yep did in this case. In addition, the witness in *Bogan* had testified that because of the poor conditions under which he observed the crime, he was unable to identify the criminal immediately thereafter.

■ Appellant next contends that the Trial Court committed reversible error by permitting the Commonwealth to use a suppressed statement for impeachment purposes. This issue arises from the following excerpt of events occurring on March 6, 1976: Following the burglary and appellant's arrest, he was taken to the hospital and interviewed there by a police officer who asked him four questions. Appellant's answers to these questions were exculpatory; they were suppressed at the time of the suppression hearing because of the hospital circumstances involved in their elicitation.

However, defense counsel himself first revealed these statements when he cross-examined the officer and, subsequent to this, appellant himself on direct examination testified to the same suppressed statement in his attempt to bolster the theory of his innocence.

For years it generally was the law in the Commonwealth that constitutionally infirm statements which a Suppression

Court declares inadmissible cannot be used to impeach a defendant who elects to testify at trial on his own behalf. *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975). However, here the appellant himself chose not only to testify but also to reiterate the factual narrative contained in the statement which was suppressed and claimed by him to be invalid. These circumstances make the instant case directly controlled by *Commonwealth v. Mobley*, 267 Pa.Super. 29, 405 A.2d 1287 (1979). There, after choosing to testify to the existence and substance of a suppressed statement, the defendant was impeached with said statement. As in *Mobley*, the appellant chose to "open the door" by disclosing the existence and substance of the suppressed statement and cannot complain now of its use. *Mobley*, supra, 267 Pa.Superior at p. 32, 405 A.2d 1287.

■ In addition, because of the similarity between the appellant's testimony and the suppressed statement, the admission of the statement, if error at all, is error that is harmless. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), *Commonwealth v. Cummings*, 466 Pa. 332, 353 A.2d 381 (1976).

Appellant next contends that the conduct of the Trial Court denied him a fair trial. Specifically, did the Trial Court's cross-examination of various witnesses constitute an abuse of its discretion? After a review of the record, we find no merit in this contention.

■ Questions of a trial judge to a defendant during direct examination which are relevant to the defense, are brief in nature and do not indicate favor or disfavor with the defendant are not improper. *Commonwealth v. Rhem*, 283 Pa.Super. 565, 424 A.2d 1345 (1980).

■ Having reviewed the objections raised by appellant with an eye to the entire testimony and notes, we find appellant's contentions to be patently frivolous. The record in this matter clearly reveals that the conduct of the Trial Court at all times was in accordance with its exalted and dignified position and the high responsibilities it is charged

with. Accordingly, since a declaration of mistrial is within the sound discretion of the Court, *Commonwealth v. Werts*, 483 Pa. 222, 395 A.2d 1316 (1978), and granted only when a bias is fixed in the minds of the jury so as to preclude a fair and objective verdict, *Commonwealth v. Williamson*, 243 Pa.Super. 139, 364 A.2d 488 (1976), we find the denial of a mistrial proper here.

The Trial Court denied appellant's request for a continuance before the selection of the jury began. Was this an abuse of discretion? The Court's decision will not be reversed except for a clear abuse of discretion. *Commonwealth v. Hughes*, 264 Pa.Super. 118, 399 A.2d 694, (1979). Although the appellant contends that his continuance request was based upon his desire to obtain the notes of testimony from the suppression hearing, there is evidence to suggest he had an ulterior motive of avoiding a particular trial judge. Whether we accept his patent first reason over the latent second one, we find the denial of the continuance is not an abuse of the Court's discretion and was proper. Appellant had ample time (a week) to request continuance rather than on the day of trial, if that were his true reason for the request. The request was untimely, and cannot afford appellant relief. *Hughes*, supra, and Pa.R.Crim.P. 301. Likewise, judge shopping cannot be encouraged.

The Commonwealth, through the exercise of peremptory challenges, struck certain prospective jurors. It is the appellant's contention that these jurors were challenged solely on the basis of their race, leading ultimately to a prejudiced jury composed of 10 whites and 2 blacks. The Pennsylvania courts have adhered to the standards set forth in the case of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). (e.g.: *Commonwealth v. Christian*, 480 Pa 131, 389 A.2d 545 (1978), *Commonwealth v. Martin*, 461 Pa 289, 336 A.2d 290 (1975).)

The United States Supreme Court in *Swain* held that a prosecutor's use of peremptory challenges which resulted in an exclusion of black jurors from a particular jury panel did not violate the 14th amendment, and further, a defendant is

not constitutionally entitled to demand a proportionate number of his race on the jury panel which tries him. *Swain,* supra; *Commonwealth v. Jones,* 465 Pa 473, 350 A.2d 862 (1976).

In fact, an objection to the composition of a jury panel is proper only if made to the selection process of the prosecutor involved resulting in a studied exclusion of a particular type of person and not to the characteristics of the general panel from which the jury is ultimately chosen. *Commonwealth v. Greene,* 469 Pa 399, 366 A.2d 234 (1976). The record here, as in *Swain,* clearly does not demonstrate the kind of systematic exclusion in *case after case* of all black jury members required by *Swain,* 380 U.S. at p. 223, 85 S.Ct. at 837. In fact, appellant's jury did seat 2 blacks on it—per se evidence that the *Swain* and *Jones* standard of a fair trial in this regard was not even approached.

Appellant's counsel attempted to call Officer Bushman as a court witness so that he may cross-examine him concerning his eye-witness statement given at the scene. Appellant's argument was that since the witness may possibly be hostile or testify in a manner adverse to the appellant, he should not be bound by his testimony. Subsequent to the denial of the request, appellant's counsel called the officer as his own witness. Even if the denial was improper, appellant's counsel was permitted to question the witnesses who were called concerning any inconsistencies in the substance of the Officer's statement to investigators and the record reveals great leeway in developing the direct testimony of Officer Bushman. Thus, the denial was clearly harmless. We find no merit in this contention.

The appellant further contends that it was an abuse of Trial Court's discretion to deny his motion for mistrial on grounds that the Court's summary of the evidence in its charge to the jury was improper. We cannot rely upon excerpts taken from the notes of testimony, but rather must take the Judge's charge as delivered in its entirety. *Commonwealth v. Lesher,* 473 Pa 141, 373 A.2d 1088 (1977). In

doing this, we find that the Trial Judge's charge impartially discussed appellant's theory of the case without expressing an opinion on its validity. It is clear from the record that the summary was fair and impartial. *Commonwealth v. Stoltzfus*, 462 Pa 43, 337 A.2d 873 (1975), and thus cannot supply appellant with a means for appellate relief.

■ As a corollary, to this, appellant maintains that the Trial Court committed prejudicial error in failing to properly instruct the jury. He contends that the Court's instruction placed an affirmative burden of establishing a defense upon the defendant. Counsel did not except to this at the close of the jury charge. Therefore, it is considered waived. *Commonwealth v. Russell*, 459 Pa. 1, 326 A.2d 303 (1974); *Commonwealth v. McDonald*, 459 Pa 17, 326 A.2d 324 (1974). Further, the two additional objections as to "missing evidence" and "the effect of prior inconsistent statements on the credibility of the witnesses making such statements" (see D.A. Brief p. 7) are not meritorious on appeal. They are dismissed.

■ Appellant further complains that the Trial Court erred in refusing to take judicial notice of the contents of the complaint. These contents insofar as they were relevant to the charges which defendant was tried on, were testified to by the affiant who signed the complaint. The Court properly refused to take judicial notice of the remaining contents of the complaint or to permit the admission of irrelevant portions (i.e. appellant was charged additionally with resisting arrest which was withdrawn before trial). Evidence is admissible at trial to establish (or tend to establish) a material fact to the case. *Commonwealth v. Stewart*, 461 Pa 274, 336 A.2d 282 (1975); *Commonwealth v. Myers*, 439 Pa 381, 266 A.2d 756 (1970). Thus, the additional charges in the complaint were not a proper subject for judicial notice or as admissible evidence. In addition, appellant fails to assert how he was prejudiced by the Court's refusal of judicial notice, which further indicates his failure to be entitled to relief.

■ Appellant's tenth and final contention that the Commonwealth failed to show by clear and convincing evidence an independent origin upon which an in-court identification could be made by eye witness Yep is frivolous and redundant at this point. It is clearly demonstrated by the facts of the case and discussed in detail above that Yep had a prime opportunity to observe appellant at the scene. The Commonwealth's evidence as to this rose not only to the level of "clear and convincing" but well beyond.

By dealing with each of appellant's points of appeal in a step-by-step manner, we have clearly demonstrated that they have no merit and do not entitle him to appellate relief.

Accordingly, the judgment of sentence below is affirmed.

Affirmed.

SPAETH, J., concurs in the result.