J-S62029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DEMAR CAMPBELL, | |
| Appellant | No. 3053 EDA 2013 |

Appeal from the Judgment of Sentence October 14, 2013
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0001266-2013

BEFORE:  ALLEN, OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 27, 2014**

Appellant, Demar Campbell, appeals from the judgment of sentence entered on October 14, 2013.  We affirm.

The trial court accurately summarized the factual background of this case as follows:

> Anisha Bryan [("Bryan")] testified that she had a romantic relationship with [Appellant] that began around September of 2011.  During this relationship, [Appellant] resided with Bryan at her residence in Emmaus, Pennsylvania.  She ended the relationship with [Appellant] in June or July of 2012 at which point [Appellant] moved out of Bryan's home.  The two remained on speaking terms.
>
> Bryan testified that on the evening of February 7, 2013, [Appellant] telephoned her for a car ride.  Bryan agreed so, about 1:00 a.m. on February 8, she drove her Mercury Mountaineer from her residence in Emmaus to pick up [Appellant] who was waiting for the ride on Seventh Street in Allentown.  When he entered the Mercury, [Appellant] placed a small knife in a cup holder between the driver's seat and the

front passenger seat. [Appellant] appeared intoxicated to Bryan. Bryan moved the knife to the panel on the driver's side door. [Appellant] would not tell Bryan where he wanted to be driven so Bryan decided to drive with [Appellant] to the Walmart in Trexlertown to [d]o some shopping.

During the drive from Allentown to Trexlertown, [Appellant] attempted to persuade Bryan to renew their relationship. Bryan refused and they began to argue. [Appellant] became agitated and swung his hands. This led Bryan to stop her car and get out of it. [Appellant] moved from the passenger seat to the driver's seat. Bryan returned to the passenger seat and [Appellant] proceeded to drive on the way to Walmart.

During the drive, [Appellant] and Bryan continued to argue. [Appellant] pulled the Mercury over on Trexlertown Road in Upper Macungie Township. A portion of the parked vehicle was on the roadway. Bryan exited the vehicle and [Appellant] followed her. The two argued loudly. There was physical contact between them which included [Appellant] shoving Bryan in her torso. As the argument continued, the two reentered the car with [Appellant] in the driver's seat and Bryan in the passenger seat. When she sat down, Bryan felt pain and realized she had been stabbed in her left side.

Cassandra Turoczi [("Turoczi")], who lived on Trexlertown Road, saw the confrontation between [Appellant and Bryan]. In the early morning hours of February 8, she was sleeping on the sofa in her living room. At approximately 3:30 a.m., she was awakened by her dogs growling. She then heard a woman screaming and a man yelling. She looked from a window of her home and saw a sports utility vehicle parked partially on Trexlertown Road. She saw a taller person and a shorter person standing next to the car. She could not tell the gender of these people. She watched the taller person put hands on the shorter person and then shake the shorter person. The taller person then moved the left hand down to the chest of the shorter person. Turoczi watched the taller person grab the jacket of the shorter person and shake the person. Turoczi called the police.

Officer Dathan Schlegel and Sergeant Stephen Marshall of the Upper Macungie Township Police Department responded to Turoczi's call. Officer Schlegel was the first to arrive at the scene. He observed the Mercury parked partially on Trexlertown

- 2 -

Road and partially on the shoulder. He saw [Appellant] sitting in the driver's seat and Bryan sitting in the front passenger seat. [Appellant] was yelling at Bryan and waving his arms. Officer Schlegel approached the driver's door of the Mercury and removed [Appellant] from the vehicle. The officer smelled alcohol on [Appellant]. He put [Appellant] against his patrol car and asked for his name and to explain what was happening. [Appellant] told the officer that his name was "Omar Scat" and that he was having an argument with Bryan.

Trial Court Opinion, 2/14/14, at 3-5 (honorifics omitted).

The procedural history of this case is as follows. On April 12, 2013, an information was filed charging Appellant with two counts of aggravated assault,[1] simple assault,[2] possession of an instrument of crime,[3] driving under the influence – incapable of safe driving,[4] driving under the influence – high rate of alcohol,[5] harassment,[6] and driving while under suspension.[7]

On August 19, 2013, Appellant filed a motion *in limine* to preclude the introduction of tape recorded conversations, and transcripts thereof, between him and Gabrielle Noukpozounkou ("Noukpozounkou") that were recorded while Appellant was imprisoned. On August 26, 2013, the trial

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(4).

[2] 18 Pa.C.S.A. § 2701(a)(2).

[3] 18 Pa.C.S.A. § 907(a).

[4] 75 Pa.C.S.A. § 3802(a)(1).

[5] 75 Pa.C.S.A. § 3802(b).

[6] 18 Pa.C.S.A. § 2709(a)(1).

[7] 75 Pa.C.S.A. § 1543(a).

court denied Appellant's motion *in limine*. Trial began that same day. During trial, Appellant requested a continuance to permit a cell phone that had been seized by police to be charged and examined. The trial court denied the request. On August 28, 2013, a jury found Appellant guilty of two counts of aggravated assault, simple assault, and possession of an instrument of crime. The trial court found Appellant guilty of driving under the influence – incapable of safe driving, driving under the influence – high rate of alcohol, harassment, and driving while under suspension.

On October 14, 2013, Appellant was sentenced to an aggregate term of 66 months and 2 days to 138 months' imprisonment. Appellant timely appealed. On November 4, 2013, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). Appellant filed his concise statement on November 7, 2013, which included all issues raised on appeal. On January 8, 2014, we dismissed this appeal for failure to file a docketing statement as required by Pennsylvania Rule of Appellate Procedure 3517. On January 9, 2014, Appellant filed an application to reinstate this appeal, which we granted on January 13, 2014. On February 14, 2014, the trial court issued its Rule 1925(a) opinion.

Appellant presents three issues for our review:

1. Whether or not the evidence as presented was sufficient as a matter of law to support [Appellant's] conviction for aggravated assault and simple assault based upon [Appellant] being the actual perpetrator of the alleged assault?

- 4 -

2. Whether the trial court erred by permitting redacted phone conversations from [Appellant] to a third-party to be admitted as evidence as possible admissions by [Appellant] of his involvement in the stabbing?

3. Whether the trial court erred by failing to grant [Appellant's] request for a brief recess to allow for a brief investigation regarding the alleged phone contacts between [Appellant] and [Bryan]?

Appellant's Brief at 7 (complete capitalization removed).

Appellant first contends that the evidence was insufficient to find him guilty of aggravated assault and simple assault. "Whether sufficient evidence exists to support the verdict is a question of law; thus, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa. 2014) (citation omitted). In reviewing a sufficiency of the evidence claim, we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Kearney*, 92 A.3d 51, 64 (Pa. Super. 2014) (citation omitted). "Additionally, the evidence at trial need not preclude every possibility of innocence. . . . [T]he fact-finder is free to believe all, part[,] or none of the evidence." *Commonwealth v. Trinidad*, 90 A.3d 721, 728 (Pa. Super. 2014) (citation omitted).

An individual is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally,

knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life [or]. . . attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]" 18 Pa.C.S.A. § 2702(a)(1,4). "The elements of simple assault are the attempt to cause or intentionally, knowingly or recklessly caus[ing] bodily injury to another[.]" ***Commonwealth v. Weigle***, 949 A.2d 899, 906 (Pa. Super. 2008), *affirmed*, 997 A.2d 306 (Pa. 2010) (internal quotation marks omitted), *citing* 18 Pa.C.S.A. § 2701(a).

Appellant's only argument with respect to the sufficiency of the evidence as to both the aggravated assault and simple assault convictions is that there was insufficient evidence to prove that he actually stabbed Bryan. He argues that the only evidence that supports the jury's finding that he stabbed Bryan is circumstantial. He contends that there is no evidence that he ever regained possession of the knife after Bryan removed it from the cup holder when Appellant got in the Mercury.

It is well-settled that "circumstantial evidence can itself be sufficient to prove any or every element of the crime[.]" ***Commonwealth v. Perez***, 93 A.3d 829, 841 (Pa. 2014) (citation omitted). Viewed in the light most favorable to the Commonwealth, the circumstantial evidence in this case is overwhelming. Appellant was the individual that introduced the knife into the vehicle. Bryan removed the knife from the cup holder and placed it in the panel of the driver's side door. After that occurred, Appellant and Bryan

switched places and Appellant was in the driver's seat while Bryan was in the passenger seat. From this position, Appellant had ready access to the knife. Appellant admits that thereafter an altercation between himself and Bryan occurred on the side of the road. Bryan and Turoczi testified that Appellant shook and shoved Bryan in her torso during the confrontation. Prior to this altercation, Bryan did not have a stab wound; however, after Appellant shook and shoved Bryan she did have a stab wound. DNA testing showed that Bryan was stabbed with the knife that Appellant had brought into the car. From this circumstantial evidence, the jury could reasonably conclude that Appellant stabbed Bryan during the confrontation. Therefore, the Commonwealth satisfied its burden to prove every element of both aggregated assault and simple assault beyond a reasonable doubt.

Appellant next challenges the trial court's denial of his motion *in limine* to prohibit introduction of the recorded phone conversations, and transcripts thereof, between Appellant and Noukpozounkou. "When reviewing a ruling on a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion." **Commonwealth v. Orie**, 88 A.3d 983, 1022 (Pa. Super. 2014), *appeal denied*, 172 WAL 2014 (Pa. Sept. 17, 2014) (internal alteration and citation omitted).

Appellant first contends that the recording was "unclear and uncertain based in large part upon [Appellant's] heavy Jamaican accent." Appellant's Brief at 14. Appellant argues that because the recording was unintelligible, it should not have been admitted into evidence. "[A] recording will be admissible unless the inaudible portions or omissions are so substantial as to render the recording as a whole untrustworthy." ***Commonwealth v. Leveille***, 433 A.2d 50, 52 (Pa. Super. 1981) (citation omitted). Prior to trial, the trial court listened to the recording and concluded that the inaudible portions were not so substantial as to render the recording untrustworthy. The recording was included in the certified record on appeal. We have listened to the conversations admitted into evidence. Although Appellant does have a thick accent, and at times the recording is unintelligible, as a whole Appellant and Noukpozounkou can both be understood and the unintelligible portions are not so substantial as to render the recording unreliable.

Appellant also contends that one of the recordings should have been excluded because Appellant is discussing the possibility of accepting a plea agreement. Pennsylvania Rule of Evidence 410 provides, in relevant part:

> In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:

> * * *

- 8 -

(4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later withdrawn guilty plea.

Pa.R.Evid. 410(a)(4).

In this case, the conversation between Appellant and Noukpozounkou did not fall under the Rule 410(a)(4) prohibition against the admission of plea negotiations. The rule only prohibits the introduction of statements made during discussions with the prosecuting authority. The statements by Appellant to Noukpozounkou were not to a prosecuting authority but rather were to Appellant's friend. Rule 410(a)(4) therefore does not apply in this case. *Cf. Commonwealth v. Stutler*, 966 A.2d 594, 599 (Pa. Super. 2009) (Rule 410(a)(4) only applies when the defendant reasonably believes that he is actually negotiating a plea agreement).

Appellant contends that the recordings should have been excluded as they were unduly prejudicial. Pennsylvania Rule of Evidence 403 provides, in relevant part, that, "The court may exclude relevant evidence if its probative value is outweighed by a danger of . . . unfair prejudice[.]" Pa.R.Evid. 403.

Our research has failed to uncover a Pennsylvania case that stands on all fours with the present case. Nonetheless, we find instructive the decision of the Ohio First District Court of Appeals in *Ohio v. Crawford*, 2008 WL 4823027 (Ohio App. Nov. 7, 2008), *appeal denied*, 908 N.E.2d 945 (Ohio 2009). In *Crawford*, the trial court admitted into evidence taped

conversations between the incarcerated defendant and his girlfriend. *Id.* at *4. During those conversations, the defendant admitted that he had committed a murder with which he had been charged. *Id.* Although the court redacted certain portions of the conversations that referred to a previously accepted plea agreement, other segments of the recorded conversations that were played for the jury still referred to the defendant's engagement in plea negotiations. *Id.* Following his convictions, the defendant appealed objecting, *inter alia*, to the admission of the conversations under Ohio Rules of Evidence 403 and 410.[8] The Court of Appeals concluded that, "The probative value of the tapes far outweighed any danger of prejudice to Crawford." *Id.* at *8. The United States District Court for the Southern District of Ohio held that this conclusion was reasonable. ***Crawford v. Warden, Warren Corr. Inst.***, 2011 WL 5307408, *26 (S.D. Ohio Sept. 29, 2011), *adopted*, 2011 WL 5304157 (S.D. Ohio Nov. 03, 2011).

We likewise find instructive the decision of the Texas Court of Appeals-San Antonio Division in ***Willis v. Texas***, 2010 WL 2935772 (Tex. App. July 28, 2010). In ***Willis***, the defendant wrote a letter to a police officer in which

---

[8] Ohio Rule of Evidence 403, like the federal rule, prohibits evidence when its probative value is substantially outweighed by the risk of unfair prejudice. ***See*** Ohio.R.Evid. 403; Fed.R.Evid. 403. However, as noted above, the ***Crawford*** court found that the recordings' probative value substantially outweighed the risk of unfair prejudice. ***Crawford***, 2008 WL 4823027 at *8. Thus, the recording would have been admissible under the Pennsylvania rule. Ohio Rule of Evidence 410 is substantially the same as Pennsylvania Rule of Evidence 410. ***Compare*** Ohio.R.Evid. 410 *with* Pa.R.Evid. 410.

he offered to plead guilty to certain charges in exchange for other charges being dropped. *Id.* at *1. The defendant objected to the admission of the letter under Texas Rules of Evidence 403 and 410.[9] The trial court overruled the defendant's objection and the letter was admitted into evidence. After the defendant was convicted, he appealed, arguing, *inter alia*, that the trial court erred by admitting the letter. The Court of Appeals concluded that the letter was highly probative and the risk of unfair prejudice was low. *Id.* at *5. Thus, it concluded that the trial court did not abuse its discretion by admitting the letter into evidence. *Id.*

As in *Crawford* and *Willis*, in this case, the probative value of the conversations was extremely high. Although there was testimony from Bryan that the knife that was used to stab her belonged to Appellant, in one of the conversations Appellant arguably admitted that the knife belonged to him. In the other conversation, Appellant arguably admitted that he had stabbed Bryan. It is difficult to imagine more probative statements.

The statements made by Appellant during the conversations were obviously prejudicial (as is any evidence that tends to show a defendant is guilty); however, Rule 403 only permits the exclusion of evidence if the probative value is outweighed by the risk of **unfair** prejudice. In this case, Appellant and Noukpozounkou were both notified prior to the conversations that the conversations were being recorded. Despite this warning, Appellant

---

[9] Texas Rules of Evidence 403 and 410 are substantially the same as those of Ohio. **See** note 8, *supra*.

chose to make the admissions. Although one of the conversations mentioned plea negotiations, the conversation was mainly discussing Appellant's guilt. Under these circumstances, we conclude that the trial court did not abuse its discretion when determining that the probative value of the conversations outweighed the risk of unfair prejudice.

Appellant also objects to transcripts of the recordings being provided to the jury. Generally, transcripts of recording conversations can be provided to the jury. *See Commonwealth v. Proctor*, 585 A.2d 454, 462 n.4 (Pa. 1991) (citation omitted). In this case, the trial court provided a cautionary instruction to the jury regarding the transcripts. *See* N.T., 8/27/13, at 205-207. The trial court instructed the jury that the transcripts were merely a guide and that they could only rely upon those portions of the conversations that they could understand themselves. *See id.*

Although the Pennsylvania State Standard Criminal Jury Instructions do not provide an instruction for this situation, the United States Court of Appeals for the Third Circuit's model jury instructions do include a limiting instruction. *See* 3d Cir. Model Criminal Jury Instruction 2.07. The instruction given by the trial court in this case included all of the essential points of the model Third Circuit instruction. It is presumed that the jury followed the court's instructions. *Commonwealth v. Fortenbaugh*, 69 A.3d 191, 195 n.2 (Pa. 2013) (citation omitted). Therefore, the jury would not have placed undue weight on the transcripts as they were instructed that

- 12 -

the transcripts were merely a guide for listening to the recordings. As such, the trial court did not abuse its discretion by permitted the jury to have the transcripts. We therefore conclude that all of Appellant's arguments relating to the denial of his motion *in limine* to preclude the recordings, and transcripts thereof, are without merit.

Appellant's final issue challenges the trial court's denial of a motion for continuance made during trial. Appellant sought the ability to charge a cell phone that had been seized by police so that he could see if there was any information that could be extracted from the cell phone. The cell phone belonged to Appellant and was recovered from the vehicle on the night of the incident in question. "The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion." **Commonwealth v. Hansley**, 24 A.3d 410, 418 (Pa. Super. 2011), *appeal denied*, 32 A.3d 1275 (Pa. 2011) (citation omitted).

The trial court denied the requested continuance for two reasons. First, it concluded that the request was untimely. Trial Court Opinion, 2/14/14, at 12. Consistent with its obligations under **Brady v. Maryland**, 373 U.S. 83 (1963), the Commonwealth disclosed the existence of the cell phone prior to trial. Despite this fact, Appellant did not request to review the cell phone prior to trial. Instead, he waited until trial was already in

progress to request a continuance to permit the phone to be charged and the contents examined.

Second, the trial court concluded that any evidence that would have been gathered from the cell phone would not have been relevant. Trial Court Opinion, 2/14/14, at 12. Appellant argued that the phone could provide evidence to impeach the credibility of Bryan. She testified at trial that Appellant contacted her and requested a ride. Appellant contends that the phone may have had evidence that Bryan contacted Appellant before he contacted her.

We conclude that the trial court did not abuse its discretion in denying Appellant's request for a continuance. Appellant knew that his cell phone had been seized from the vehicle since the incident occurred on February 8, 2013. Therefore, Appellant had over six months to request the cell phone from the Commonwealth for the purposes of learning what data it contained. Instead, Appellant waited until trial had commenced to request a continuance to examine the cell phone. Thus, Appellant's request was patently untimely. *See Commonwealth v. Anderson*, 448 A.2d 1131, 1134 (Pa. Super. 1982) (trial court did not abuse its discretion in denying continuance on eve of trial because defendant could have requested continuance in the week prior to trial); *Commonwealth v. Parente*, 133 A.2d 561, 564–565 (Pa. Super. 1957) (failure to explain why evidence could not have been obtained during the previous five months rendered the

defendant's motion for continuance untimely). Furthermore, any information that Appellant would have been able to recover from the cell phone would not have been relevant to the central issue in this case, *i.e.*, whether Appellant stabbed Bryan on the side of the road. Whether Bryan contacted Appellant first or vice versa was immaterial to what occurred once Bryan and Appellant had a confrontation on the side of the road. Accordingly, Appellant's third issue on appeal is without merit.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/27/2014